1829.

White
v.
Williams.

[*502]

The petition must be dismissed with costs.

---

WHITE *v*. WILLIAMS AND OTHERS.

Where upon a sale of lands the negotiable note of the purchaser is given for the purchase-money, the vendor retains an equitable lien upon the land, but an indorsee is not from the mere transfer of the note entitled to the benefit of such lien where the indorser has not been made liable upon his indorsement.

Where a judgment was entered on a bond and warrant, and a specification was filed under the act of April 21st, 1818, and it appeared no such consideration as that stated in the specification existed, the judgment was declared fraudulent and void as against other judgment creditors.

If a judgment is void as against a subsequent judgment creditor, it is also void as against a purchaser under the subsequent judgment.

In July, 1815, the defendants, C. & W. W. Williams  1829.
purchased of L. Kingsbury a farm in the county of Madi-  ————
son, and gave to him their negotiable note for a portion of  White
the purchase-money.   He sold the note to the complainant, July 8th.
who afterwards negotiated it to J. & W. M. Burr; and the
note not being paid when it fell due, the complainant was
duly charged as indorser thereof.   A suit was afterwards
brought and judgment obtained in the name of the holders
of the note against the drawers in the Supreme Court;
which judgment was docketed and an execution issued
thereon upon the 9th of January, 1819.   The complainant
afterwards paid the amount to the holders of the note, and
took an assignment of the judgment.   In September, 1819,
he caused the farm to be sold upon the execution, and ob-
tained a conveyance of the same from the sheriff.   In No-
vember, 1818, *during the pendency of the suit upon the  [*503]
note, the defendants therein gave to R. & L. Williams, their
mother and brother, a judgment bond for $2,301 52;
another to Parker and wife, their brother in law and sister,
for $912 70, upon which judgments were entered up and
executions immediately issued; under one of which judg-
ments the whole real and personal property, and some
promissory notes of C. & W. W. Williams were turned out
to the sheriff and sold.   The farm was purchased at the
sale by the mother, and the personal property and notes
by the brother and brother in law.

The complainant filed his bill in this cause setting forth
the above facts, and also alleging that the judgments thus
confessed were fraudulent and given without consideration,
and were intended to defeat the remedy upon the note;
and also that the specifications filed at the time of entering
up the judgments in conformity to the provisions of the act
of 1818, were insufficient.   He also insisted if the judg-
ments were not invalid or fraudulent that he was entitled
to a specific lien on the land, upon the ground that the
notes were given for the unpaid purchase-money.   The de-
fendants in their answer denied all fraud in entering up the

1829.

White
v.
Williams.

judgments ; and they set out the consideration upon which they were given. The consideration however thus set out varied materially from that stated in the specifications. The defendants also insisted that the complainant was not a *bona fide* judgment creditor or purchaser, and therefore that he was not entitled to set up the insufficiency of the specifications.

The cause was heard upon the pleadings and proofs.

*C. Stebbins* for the complainant:—The judgments confessed by the defendants Cranston and William W. Williams to Rebecca and Lemuel Williams and to Barker and wife, were fraudulent as against the complainant. The consideration of these judgments, set forth in the answer of the defendants, varies from that stated in the specifications filed at the time of entering up the judgments. A part of the consideration was certain legacies given to the younger children by their father, and which were claimed by Rebecca Williams as their natural guardian. These

[*504]

legacies were charged *upon the real estate, and Rebecca Williams, neither as administratrix of her husband nor as *natural guardian* of the children had any right to them ; (*Combs* v. *Jackson*, 2 Wendell's Rep. 153.) To render these judgments fraudulent as against the complainant for the purposes of relief, it is only necessary for him to show that they were given for more than was due the plaintiffs therein, and that the indebtedness is of such a nature as to render it inequitable for them to set it up against the complainant. The creditors here are family creditors, who have contributed to give a false credit to the debtors. The time at which these judgments were confessed shows that the object was to avoid the payment of the complainant's debt. Circumstances like these have been held sufficient to invalidate a conveyance even to an innocent grantee. (*Hildreth* v. *Sands*, 2 John. Ch. R. 35.) A fair judgment if used by a debtor to affect a change of property for his own benefit is fraudulent as to other creditors ; (*Williams*

v. *Brown*, 4 John. Ch. R. 682.) The judgments under which the defendants claim are invalid for want of proper specifications under the act of 1818, p. 280 ; (*Lawless* v. *Hackett*, 16 John. R. 149 ; *Brinckerhoof* v. *Marvin*, 5 John. Ch. R. 325 ; *James* v. *Johnson*, 6 John. Ch. R. 433.) The complainant is a *bona fide* purchaser within the meaning of the act; (*James* v. *Johnson*, 6 John. Ch. R. 433 ; *James* v. *Morey*, in error, 2 Cowen, 290, 311.) The complainant also stands in the place of the vendor, and has as his indorsee an equitable lien upon the premises for the purchase-money, which will be enforced against the defendant Rebecca Williams; (*Hughes* v. *Kearney*, 1 Sch. & Lef. 132 ; *Mackreth* v. *Symmons*, 15 Ves. 329.) It was not necessary to make either Kingsbury or the Burrs parties, they having no interest in the controversy ; (*Whitney* v. *McKinney*, 7 John. Ch. R. 144.) The lien for purchase-money will be decreed against a purchaser with notice ; (*Ex parte Loaring*, 2 Rose's Cas. in Bank. 79 ; *Mackreth* v. *Symmons*, 15 Ves. 329 ; *Adair* v. *Shaw*, 1 Sch. & Lef. 262 ; *Champion* v. *Brown*, 6 John. Ch. R. 403 ; *Garson* v. *Green*, 1 Id. 208.) Purchasers coming in by act of law as assignees of bankrupts are bound by the lien without notice. Sugden's Law of *Vendors, 364.) So is a purchaser under a judgment; especially if he be the judgment creditor. The defendant Rebecca Williams purchased with notice.

[*505]

*J. A. Spencer*, for defendants :—The answer of the defendants denies all fraud. It is in response to the bill and is uncontradicted. It being established that the judgments were valid, it is of no importance how the property was used after the sale. (*Lenox* v. *Prout*, 3 Wheat. 527 ; *Hart* v. *Ten Eyck*, 2 John. Ch. R. 92 ; *Clason* v. *Morris*, 10 John. R. 542 ; *Woodcock* v. *Bennet*, 1 Cowen's Rep. 743.) The circumstances of the family were such that no visible change could take place in the use of the property. The defendants who are judgment creditors had no knowledge of the suit commenced upon the Kingsbury note; and it would be immaterial if they had, as their debt was a *bona*

*fide* one and the debtors had a perfect right to give them a preference by confessing judgment in their favor or otherwise. (*Wilder & Hastings* v. *Winne & Fonda*, 6 Cowen, 284.) The complainant having failed to impeach the consideration of the judgments, his suit must fail, as fraud out of the case is no ground for the bill. (*Lyon* v. *Richmond*, 2 John. Ch. R. 58.) The defect in the specifications, if any, cannot be taken advantage of by the complainant, he not being either a judgment creditor or a purchaser within the meaning of the act. (Laws of N. Y. sess. 40, 1818, ch. 259, sec. 5.) He is only the assignee of a judgment creditor. The act ought not to be extended by construction. (*Seaving* v. *Brinckerhoff*, 5 John. Ch. R. 331.) The complainant cannot charge the land with the payment of Burr's judgment on account of any lien for the amount of the note given to Kingsbury for the purchase-money. Such lien has never been enforced except against the vendee, his heirs, or a purchaser with notice. (*Garson* v. *Green*, 1 John. Ch. R. 308; *Hughes* v. *Kearney*, 1 Sch. & Lef. 132.) In this case notice is fully denied. But if there had been notice, no person but the original vendor could enforce the lien; or, at least, it must be done in his name. The omission to make Kingsbury, the vendor, a party, is a complete waiver of the lien. The defendants *Rebecca and Lemuel Williams and Baker and wife have an equitable lien upon the land in question, upon the ground that the same was purchased with their money. (*Foot* v. *Colvin*, 3 John. R. 216.) Rebecca was entitled to the guardianship of her infant children, (Coke's Litt. 88 b, n. 13; id. n. 16, 90, a 1; *Byrne* v. *Van Hoesen*, 5 John. R. 66;) and as such guardian, to the possession of their estate.

THE CHANCELLOR :—The claim of the complainant for a specific lien on the premises upon the ground that his judgment was obtained on a note given for a part of the purchase-money cannot be sustained. At the time he bought the note of Kingsbury the latter unquestionably had such a

lien; but it is not pretended there was any agreement that such lien should be transferred to the complainant. If Kingsbury could be considered as still retaining any such claim after the transfer of the note, it must be on account of his liability as indorser thereof. But there is no evidence or even allegation that any steps were taken to charge him as indorser. In a recent case where the vendor had negotiated the note but was obliged to take it up himself when it fell due, Lord Eldon sustained the claim of the original vendor to a lien on the land. (*Ex parte Loaring*, 2 Rose's Ca. 79.) But I am not aware of any case where the assignee of the note, or other security, has been permitted to sustain such a claim on an implied agreement to assign the lien.[1.] In the case of *Mackreth* v. *Symmons*, (15 Ves. 329,) cited by the complainant's counsel, there was an express agreement at the time of the sale, that the purchase-money should be applied to the payment of the vendor's debt to the third person. If Kingsbury holds any such lien as trustee for the holder of the note, he should have been a party to this suit. But I am satisfied that the sale and prosecution of the note to judgment in the name of the indorsee must be considered as a waiver of the original implied lien for the purchase-money on the land.

It is not necessary for me to examine the question whether the specifications filed are sufficient on their face to sustain the judgments, agreeably to the decision of the Supreme *Court in *Lawless* v. *Hackett*, (16 John. R. 169,) and of this court in *Brinckerhoff* v. *Marvin*, (5 John. Ch. R. 320.) I am inclined to think that most of the items in both specifications may be sufficient; but they can only be sustained by giving to them a construction which, as it now appears, is wholly fictitious and false. For instance, the largest item in the first specification is " Sealed obligation, dated 2d April, 1816, for the third part of the real estate of Wareham Williams, deceased, of which Rebecca Wil-

1829.

White
v.
Williams.

[*507]

[1] *Brush* v. *Kinsley*, 14 Ohio, 30; *Brigg* v. *Hill*, 6 How. Miss. R. 362; Bland's Ch. R. 524.

1829.

White
v.
Williams.

liams was endowed, $1,145 50." Perhaps this might be sufficient to give notice to all persons interested, that this note was given for the purchase-money on a sale of one-third of that real estate by the plaintiffs in the judgment to the defendants. But understood in that way, it would be wholly false and fictitious. By the answer it appears that one of the plaintiffs in that judgment was devisee of one-third of such real estate, and one of the defendants was devisee of the other two-thirds; that they both joined in the sale, and each received their just proportion of the purchase-money; and that the note was given some years afterwards to the mother alone; and the alleged consideration thereof is goods sold and money lent at various times, which it is impossible for them now to recollect; which money and goods she had taken in payment on the sale. And the same difficulty exists with respect to almost every item in this specification. In the other specification the principal item is "Two notes given for the principal and interest of lands sold by Anne Wood, now Anne Barker, and late Anne Williams, in the town and county of Madison; defendants had the money for which the land was sold, $846 30." The allegation now set up in relation to this is that Granston Williams purchased of her about thirty-two acres for which he never paid the purchase-money; that he afterwards sold it to Hazard and took his notes for the purchase-money, which are probably the same notes sold under the execution and purchased by L. Williams. The statute requiring these specifications to be filed, expressly declares that if the judgment is afterwards drawn in question, the plaintiff shall be bound and concluded by the specification filed, and shall not thereafter be allowed to set up or insist *on any consideration for the judgment, not mentioned and contained in such statement and specification. (Laws of 1818, ch. 259, sec. 8.) Whatever my opinion might be as to the consideration of these judgments, which is now set up in the answer, I am satisfied the defendants cannot avail themselves of it under these

[*508]

specifications; and the judgments must, therefore, in the language of the statute, "be taken, deemed and adjudged fraudulent as respects any other *bona fide* judgment creditors." There is no doubt the complainant is in a situation to take advantage of the statute remedy. He is a *bona fide* assignee of the judgment, and had an equitable interest in it for his own protection, as indorser of the note, even before that assignment. As a purchaser of the premises under the judgment, he is also entitled to all the rights which the judgment creditor could have. (*Hildreth* v. *Sands*, 2 John. Ch. R. 35.)

Independent of the constructive fraud arising from the provisions of the statute, there is strong reasons for believing these judgments were confessed and used for the express purpose of screening the whole of the defendant's property from the operation of the judgment, which was about to be obtained on the note given by them. The judgments were given pending that suit; and by the stipulation in the case it is admitted that all parties had notice of the note, and of the pendency of the suit thereon. It is true a copy of what purported to be a further answer was served, in which all the defendants say they had no knowledge that any such suit was pending at the time these judgments were given. If such an answer had actually been put in, it would not, under the circumstances of this case, be entitled to any credit. And from the certificates of the register and clerk, it appears that if any such further answer was sworn to by them they have not dared to put it on file. At the sale, the property was all bid in by the family; and even notes against a responsible person for $650 were turned out to the sheriff, and sold for the nominal sum of $35; and since the sale down to the time of taking the testimony in 1827, the property had remained in the hands of the original owners without any visible change in their manner of using and disposing of the same.

*There must be a decree declaring both judgments fraudulent and void as against the complainant; and the posses-

sion of the farm must be delivered up to him; and the defendant must execute to him a good and valid release for the same in fee, to be approved of by a master; and the defendants must also pay to the complainant his costs in this suit to be taxed.