MARTIN v. LUNDIE.

1. Where the vendor of land takes notes with security, and gives a bond to make titles when the notes are paid, if he afterwards indorses one of the notes, and the indorsee discharges the surety, he is not entitled to enforce the vendor's lien upon the land.

WRIT of error to the Court of Chancery of Talladega.

The case made by the bill is this.

Lundie, the defendant, in February, 1837, sold several contiguous subdivisions of the same section of land, to one Milton, for the sum of 2500 dollars, and took two promissory notes from him, with one Richey as security: one, for 750 dollars; and the other, for 1750 dollars; both due on the 1st January, 1838. Lundie made no conveyance, but gave Milton a bond, condi-

tioned to make him titles when the notes were paid, and when the patents should be received. Some time after the execution of the notes, Lundie sold the one for the smaller sum to Martin, the complainant, and endorsed it. After the note became due, Milton and Richey both being insolvent, Martin took from Milton a portion of the land in payment of the note held by him, and cancelled it. Martin entered upon the possession of the land, with the full knowledge of Lundie, without any complaint or opposition on his part. The other note being unpaid, Lundie sued the makers at law, and pursued them to insolvency. He then filed a bill in chancery to subject all the lands sold by him to Milton for the payment of the larger note. Pending the suit in chancery, Martin filed a petition setting out his claim, and praying that he might be allowed to make himself a party and defend the suit. This was refused; and, subsequently, a decree was rendered subjecting all the land to the payment of that note. Under this decree, the whole was sold. Lundie became the purchaser, who is endeavoring to obtain possession by a suit against the tenant of Martin. The bill asserts, that by the assignment of the note, Lundie's lien upon the land was transferred to the complainant, and that it is not divested by the circumstances; that the land purchased by Martin of Milton, is only a just proportion to the whole debt. It, therefore, prays that the complainant's title may be quieted, and Lundie compelled to release his title under the decree, and for general relief.

The answer of the defendant was filed, which contains also a general demurrer to the bill for the want of equity. The answer is not considered in the decree; and, therefore, need not be stated here, except for the purpose of correcting a mistake in the briefs. It shows that the 750 dollar note was secured by one Brown, (and not Richey, as alleged by the bill,) who is asserted to have been perfectly solvent at the maturity of the note.

The chancellor dismissed the bill as having no equity. This is now assigned as error.

L. E. PARSONS, for the plaintiff in error, made the following points:

1. Lundie retained a lien, for the purchase money, on the land sold. [Foster v. Athenaeum, 3 Ala. Rep. N. S. 302; Haley v. Bennet, 5 Porter, 452; Mackrath v. Symmons, 15 Vesey, 29;

Martin v. Lundie.

Brown v. Gilmore, 4 Wheat. 256; Bailey v. Greenleaf, 7 Wheat. 46.]

2. This lien has the same character, to all intents, as a mortgage. [Haley v. Bennet, 5 Porter, 452.]

3. By Lundie's transfer of this lien, by the assignment of the note, Martin acquired the preference to be first paid. [Cullum v. Erwin, 4 Ala. Rep. 452; 9 Cowen, 316; Kinney v. Collins, 4 Litt. 289; 4 ib. 317.]

4. The debt being the principal, and the mortgage only the incident, the creditor has a right to pursue all his remedies until a satisfaction. [Duval's heirs v. McLoskey, 1 Ala. Rep. N. S. 708; Story's Equity, 1016.]

5. The courts look at the intention of the parties; and if nothing is expressed, the lien is transferred with the debt. Hall's adm'r v. Click, [June Term, 1843,] proceeds upon the principle that the intention there, was not to transfer the lien.

6. As the assignment of the debt transferred the lien, the assignee had a right to purchase the equity of redemption. [2 Cowen, 286.]

7. Under the general prayer, relief may be granted, such as the plaintiff is entitled to.

Bowdon, *contra*, submitted the following points:

1. By Martin's failure to sue the makers at the first term, he lost his recourse upon Lundie, for whose protection *alone* the lien exists. When *his* liability ceases, the lien is gone. [White v. Williams, 1 Paige, 502; Hall's adm'r v. Click, June Term, '43; 7 Gill. & J. 120.]

2. When the note was taken up by the makers, it was *functus officio*, and no lien could afterwards be asserted by it. [3 Ala. Rep. 302, 352.]

3. Lundie retained the legal title, and is entitled to enforce it, as the purchase money is unpaid. [5 S. & P. 216; 3 Ala. Rep. 302.]

GOLDTHWAITE, J.—It is not necessary to put our affirmance of this decree, either upon the ground that the vendor's lien was not transferred by the assignment of the note; or upon the ground, that the lien was lost in consequence of the omission, by the assignee, to take the proper steps to fix the liability of the

assgnor; though the latter reason was held sufficient in the case of White v. Williams, [1 Paige, 502.] It is upon the notion of an implied agreement, that the assignee of a bond or note, given for the purchase of land, is permitted, in equity, to enforce the vendor's lien; and the case of Hall's adm'r v. Click, [June Term, 1843,] is illustrative of the rule. There, it was held, that no such implication arose when the note was transferred without recourse. Here, it will be seen, that in addition to the lien upon the land, the vendor also had the security of another individual. If it was conceded, that an agreement might be implied to permit the assignee, in this case, to enforce the vendor's lien, either for the entire, or *pro rata*, payment of the note, the agreement must be understood with the reservation, that the rights of the vendor should not be impaired by any action of the assignee. It is undeniable, that all remedy against the surety upon this note, has been lost by taking the land in payment, as well as by the cancellation of the note. If the assignee could now be permitted to enforce the note against the land, the consequence, to the vendor, would be, that he has lost, without any negligence on his part, one of the securities which he had in the first instance. It is impossible to infer any such agreement out of the mere fact of assignment; and, therefore, we concur in the opinion of the chancellor, that the bill is without equity.

It is not improper to remark, that, as Martin was a sub-purchaser from Milton, it is possible he is not concluded by the decree of foreclosure, under which the land was sold; and it may be, that as a part of the purchase money has been paid to the vendor, that he has a right to redeem, although there was a default as to the residue.

Decree affirmed.