W. J. PERKINS, Adm'r, vs. W. W. GIBSON et al.

MORTGAGE: *Vendor's lien.   Parol agreement.*

T. being indebted to G., gave the latter verbally the sale of the land in controversy to pay the debt.   G. sold the land to Gibson for $810.   Notes were made payable to G., and T. conveyed to Gibson.   There was a

verbal agreement between the parties that G. was the vendor and T. the the grantor, and that the note was to be a lien on the land. *Held*, that the note operates as a lien upon the land, and it is bound for the purchase money in the hands of the vendee. Mortgages may not only be created by express deeds and contracts of the parties, but they may also be implied in equity from the nature of the transactions between the parties. Court of equity will regard the substance, and not the mere form of agreements and other instruments, and will give them the precise effect which the parties inteded in furtherance of that intention.

APPEAL from the Chancery Court of *Oktibbeha* County.

Hon. AUSTIN POLLARD, Chancellor.

The facts of this case are very fully stated in the opinion of the court.

The following is assigned for error, to-wit: "The sustaining of the demurrer of the defendant A. Flowers to complainant's bill."

*Muldrow & Nash*, for appellants:

The first position we take is, that the naked and plain vendor's lien existed between Green and Gibson, as the word vendor is technically used in the law books. Bouv. L. Dic., vol. II, p. 576. The sale was made at the instance of Green, and Green treated him as the vendor. Between Gibson and Thompson there was no sale. Holloway *v.* Ellis, 25 Miss., 103; Russell *v.* Watt, 41 id., 602. Assignees with notice stand in the same relation as the original purchaser. Parker *v.* Foy & Florer, 43 Miss., 261; Dodge *v.* Evans, id., 571. There is a resulting trust. Code, 1857, art. V, p. 359; Code, 1871, § 2896; Hill on Trustees, 146; 2 Story's Eq. Jur., § 1216; Hill on Trustees, 152; Mahorner *v.* Harrison, 13 S. & M., 59. Claims of this character may be supported by parol evidence. Walker *v.* Brungard, 13 S. & M., 764; Hill on Trustees, 146; 2 Story's Eq. Jur., § 1217; M'Learn *v.* M'Lellan, 10 Peters, 625–40; 4 Kent, p. 152, § 58 (3 ed.); 2 Story's Eq. Jur., §§ 1039, 1040. Cases like this are expressly excepted from the operation of the statute of frauds. Code, 1857, p. 359; Code, 1871, § 2896; 2 Story's Eq. Jur., 1218; Hill on Trustees, 154, 155; 2 Johns. Ch., 405; 5 id., 1; Adams' Eq.,

157 ; 1 Story's Eq. Jur., §§ 791–93.  Courts of equity will enforce such liens.  6 B. Mon., 67, 69 ; 41 id., 281 ; 13 Tex., 334.

*C. A. Sullivan,* for appellees :

The bill of complaints concludes that complainants have the right to enforce a vendor's lien for the purchase money of the land.  There can be no vendor's lien in such a case.  Skaggs *v.* Nelson, 25 Miss., 88 ; Briggs *v.* Hill, 6 How. (Miss.), 365 ; Patterson *v.* Edwards, 29 Miss., 67 ; Davidson *v.* Allen, 36 id., 419 ; Pitts *v.* Parker, 44 id., 247.  The lien upon the land for the purchase money gives no right of entry or title ; it is a mere claim or right to subject the property to sale, the title and right of possession remaining in the debtor until such sale.  Williams *v.* Young, 17 Cal., 403 ; 22 U. S. Dig., 388, 145 ; Hall *v.* Jones, 21 Md., 439 ; U. S. Dig., 353–72 ; Roath *v.* Smith, 5 Cranch, 133 ; Walker *v.* Williams, 30 Miss., 165 ; Harvey *v.* Kelly, 41 id., 491.

The bill does not set out or state the substance of the deed from Thompson to Gibson, or show its contents, or plead it in any way that the court can pass upon it ; and so, also, as to the alleged sale by the assignee in bankrupty to Flowers.  The name of the assignee is not even given, nor are any valid proceedings shown or set out.  Besides being loose, vague and general, the bill seeks to avoid everything like certainty.  In order to enforce a vendor's lien for the purchase money, the deeds are the very gist of the case, and must be properly set out in the pleadings but, on the contrary, the bill seeks to set up certain parol agreements and undertakings, and to contradict and vary the writings by parol.  These pretended parol agreements are void under the statute of frauds, and parol evidence is inadmissible to contradict the written agreement.  The administrator of Green, by and with the approbation of the probate court, made a new, distinct and independent contract with Gibson, extended and raised the time of payment, etc., changed the gold contract into an ordinary one, and made the note payable in three different installments.  The note describes the land, but reserves no lien.  The bill, however, seeks to vary and contradict the note by parol.  The bill is bad

both in form and substance, and the decision of the court below in sustaining the demurrer should, in our opinion, be affirmed by this court.

TARBELL, J., delivered the opinion of the court.

John Thompson being indebted to R. Green, gave the latter the sale of a tract of land, out of which to secure his debt. This was a verbal arrangement. ' Green sold the land to defendant Gibson, for $810, taking the notes of Gibson therefor to himself, and at his request, Thompson conveyed the land direct to Gibson. It was the understanding and agreement (verbal) of the parties, that Green was the vendor and Thompson the grantor of the land, and that the note was a lien thereon. Green died, and Perkins, complainant, was appointed administrator of his estate. Complainant, believing the land, if sold, would not bring enough to pay the amount of the original note, compromised with Gibson, with the consent of the probate court, by surrendering the original note and taking an obligation for the sum of $548.42, which obligation recites the land involved, as the consideration of the note. Subsequent to this compromise, Gibson took the benefit of the bankrupt law. In his schedules in bankruptcy, he describes this land as incumbered by the above note, and reports the note as a lien on the land. At Gibson's bankrupt sale, the assignee sold this land subject to the lien of the debt represented by the above note. Defendant Flowers became the purchaser of the land at the said sale with full notice of these facts. Declining to pay anything to discharge this debt, the present suit was instituted, claiming a vendor's lien in favor of the estate of R. Green, deceased. Gibson and Flowers being made defendants, Gibson answered the bill, admitting all its material allegations, but Flowers demurred on several grounds, mainly, however, because " the bill shows on its face that there is no such pretended vendor's lien; and that the pretended agreement is void under the statute of frauds; and was in parol."

The demurrer being sustained, the case was brought to this

court by appeal.   The error assigned is the action of the court in sustaining the demurrer.

Counsel for Flowers, however, in his written brief, suggests a want of jurisdiction in the state courts to entertain this case, insisting, in view of the statements in the bill, that the United States court has exclusive jurisdiction.   The following suggestions seem to dispose of this question :

1. This is not a controversy between the bankrupt and his creditors or either of them ; it is a proceeding *in rem ;* the bankrupt has no interest in this controversy and claims none.

2. The assignee in bankruptcy has no interest in the result of this suit; he sold the land involved by order of the bankrupt court subject to the lien in controversy, and is not interposing.

3. Neither are the creditors of the bankrupt interfering, either in this court or in the bankrupt court, as far as is known.

4. The bankrupt court is not claiming jurisdiction, nor is it asked to exert its jurisdiction ; that court finally adjudged the matter by directing the assignee to sell subject to the lien.

5. The bankrupt law affirms all liens upon the estates of bankrupts valid by state laws.

6. There is no evidence or intimation, that the claim of lien in this case is or has been assailed in the federal court, or that the latter court has passed upon it or proposes to pass upon it, except, that by its decrees, the assignee sold subject to this claim of lien, now sought to be enforced.

7. The assignee in bankruptcy takes the property of the bankrupt subject to all liens.   The bankrupt law of 1867, sec. 1; id., sec. 14; id., sec. 20 ; Ex parte Christy, 3 How., (U. S.), 292; Norton's Assignee *v.* Boyd, id., 426; Ex parte Foster, 2 Story, 132; Everett *v.* Stone, 3 id., 446; In re Bellows, 3 id., 428 ; In re Cook, 2 id., 378 ; Fiske *v.* Hunt, id., 588 ; Parker *v.* Muggridge, id., 334; Talbut *v.* Melton, 9 S. & M., 9; Clark *v.* Rist, 3 McLean, 494; Fletcher *v.* Morey, 2 Story, 555 ; Clason *v.* Morris, 10 Johns., 524; Bankrupt Law by Avery & Hobbs, p. 1, sec. 1; id., 47, sec. 14, and notes; id., p. 159, sec. 20 (b), et seq., and cases cited ;

---

---

Bankrupt Law by Edwin Jones, secs. 1, 14, 20, notes, and cases cited.

The question presented by the assignment of errors is this: Was a lien in favor of Green created on the facts of this case? In support of the affirmation, reference was made to Holloway *v.* Ellis, 25 Miss., 103 ; Russell and wife *v.* Watt., 41 id., 602, and 2 Story's Eq. Jur., §§ 1218, 1231.

Holloway *v.* Ellis is this : Ellis sold the land to Cook, contracting to convey to him at a date named. Ellis had bought of Sargeant who had not, at the time of the purchase by Cook, conveyed to Ellis. By request of Cook the deed was made direct from Sargeant to him. Holloway bought the land at sheriff's sale as the property of Cook subsequent to the execution of the deed by Sargeant to Cook. He denied knowledge of the claim of Ellis for the purchase money, and insisted that he was an innocent purchaser. The bill was filed by Ellis to enforce vendor's lien against the land for the unpaid purchase money. Citing Dunlap *v.* Burnett, 5 S. & M., 710, the court held, that liens created by judgment or general assignment by operation of law, are regarded as subject to all equities existing at the time in favor of third persons, and such a lien will be limited to the actual interest of the judgment debtor.

Russell *v.* Watt, as stated by the court, is as follows : Mrs. Russell was the owner in her separate right of certain real estate, given to her by her father as her marriage portion. She was placed in possession in 1848, but no deed was executed, her right resting in parol. Russell and wife sold to Jack Moore in 1860, when, at their request, the father conveyed directly to Moore. The deed to Moore was never recorded. Moore sold to Vasser, who knew that Moore still owed Russell and wife for balance of purchase money, $675. Vasser owed Moore a balance of more than that sum. The bill to enforce vendor's lien by Russell and wife was sustained. They were the substantial vendors.

This general proposition is stated in 2 Story's Eq. Jur., § 1020 : " Mortgages may not only be created by the express deeds and

contracts of the parties, but they may also be implied in equity, from the nature of the transactions between the parties." And in id., § 1231, Mr. Story says: "There is generally no difficulty in equity in establishing a lien, not only on real estate but upon personal property, or on money in the hands of a third person, whereever that is a matter of agreement, at least against the party himself, and third persons who are volunteers, or have notice. For it is a general principle in equity that, as against the party himself, and any claiming under him voluntarily, or with notice, such an agreement raises a trust." See cases cited in note 4. In vol. 1, § 791, this author says: "That courts of equity will regard the substance and not the mere form of agreements and other instruments, and will give them the precise effect which the parties intended, in furtherance of that intention."

It will be observed that the rules stated by Mr. Story are general, and it is regarded as important to note the precise facts in Holloway v. Ellis, and in Russell v. Watt, to wit: that in the former Ellis had bought the land, and doubtless held a bond for title, and in the latter, that the right of Mrs. Russell rested wholly in parol, supported by possession, the legal title being conveyed by the holders thereof in both cases at the request of the parties contracting the sale.

On the other hand, counsel for Flowers refers to Skaggs v. Nelson, 25 Miss., 88; Briggs v. Hill, 6 How., 362; Patterson v. Edwards, 29 Miss., 67; Davidson v. Allen, 36 id., 419, and Pitts v. Parker, 44 id., 247, for the assertion that there is and can be no lien on the facts of this case. In Briggs v. Hill the vendor conveyed title, taking the notes of the vendee for the purchase money. *Held*, that the vendor's lien did not pass to the assignee of the notes. In this case the rulings in Kentucky, Virginia and Tennessee, are criticised, and to some extent condemned. Title was conveyed and purchase money paid in Patterson v. Edwards, but the deed recited the further consideration that the vendee was to take up and deliver to the vendor certain notes of the latter due to the Planters' Bank. The bank was not a party to the contract.

706 · PERKINS, Adm'r, vs. GIBSON. [Sup. Ct.

Opinion of the court.

*Held*, that the taking of the collateral obligation of the vendee was a waiver of the lien for the purchase money. Davidson *v.* Allen was this : Bond was given for title and notes taken for purchase money. One of the notes was assigned to the complainant, Davidson. The court say : " The rule has been settled by this court that where the title has not been conveyed by the vendor, his assignment of a note given for the purchase money carries with it the benefit of the lien." And the court cites Tanner *v.* Hicks, 4 S. & M., 294; Parker *v.* Kelly, 10 id., 184, and Wilkins *v.* Humphrey, 23 Miss., 311. The statement of the reporter of the case of Skaggs *v.* Nelson is this : " Taylor Nelson filed his bill * * * asserting an equitable lien for the purchase money of a certain tract of land, by substitution to the lien of the vendor of the land. The bill sets up that one J. T. Nelson was the owner of the land, and bargained the same, by said Taylor Nelson (the complainant), as agent to said Skaggs, and conveys the same to Skaggs by deed. That by agreement complainant paid J. T. N. the amount of Skaggs' purchase, and took Skaggs' promissory note directly to himself for the purchase money of said land, and in this way, by general agreement of the parties, complainant was substituted as Skaggs' creditor for said purchase money, and was put in place of, and clothed with, all the rights, powers and privileges of his vendor in relation to said premises." The court say : " The vendor's lien for the purchase money is founded upon an implied trust between the vendor and purchaser; and this court has distinctly held that if the vendor makes the purchaser a deed, an assignee of a note for the purchase money has no lien upon the land for the payment of the note. 6 How., 362. In the present case the complainant was not the vendor of the land. * * The true statement of the case shows that the relationship of vendor and vendee never existed between these parties. And, as the vendor received his whole purchase money when he made the conveyance, he never had any lien on the land which could be assigned, even if the vendor's lien, when he had made a conveyance, was the subject of assignment. We are thus driven to the

'general' parol agreement, which it is said was made, that complainant should have a lien on the land for the purchase money. To give effect to such an agreement would violate the whole spirit of the statute of frauds, and introduce the very evils it was intended to guard against."

Pitts v. Parker presents these facts : McGowan and Parker were complainants against the administrator and heirs of Coon, deceased, and Lewis, asserting a lien on a tract of land. McGowan bought the land from Byram, giving his note for the purchase money, a description of the land being specified in the note. Title was conveyed to McGowan. Byram transferred the note to Parker. The legal title to the note was returned to Byram, who agreed to enforce the vendor's lien for the benefit of Parker. McGowan sold the land to Coon, who purchased with knowledge that the original purchase money was not paid, and the lien therefor existed. Coon undertook to pay the note of McGowan for the original purchase money. Coon sold part of the land to Lewis, one of the defendants. Byram and McGowan agreed that the vendor's lien should be retained. Byram and Parker agreed that the note carried with it the lien, which should be enforced by Byram for Parker's benefit. The court say : " The transactions between Byram and Parker and McGowan and Coon show an effort by agreement to create or continue a lien, condemned by the case of Skaggs v. Nelson. The recital in the body of the note, that it was given for the land therein specifically described, does not create an express lien on the land. * * * The statement of the consideration on its face has no other virtue than to furnish written evidence of the fact." *Held*, the bill did not show an equity in complainant against the land. As in the cases cited by counsel in support of the theory of the bill, attention is invited to the precise facts of the cases last referred to. In Briggs v. Hill, Patterson v. Edwards, and Pitts v. Parker, the legal title was conveyed as a part of the original transaction. The notes of the purchaser were assigned by the vendor in the first. In the second, the collateral obligation of the vendee was taken, an independent

undertaking, in addition to the purchase money proper, which was paid. And in the third, there was an attempt at an arrangement to evade the effect of the assignment of the note by the vendor, he agreeing to retain the legal title thereto, and enforce it and the lien for the benefit of the assignee.

Davidson v. Allen was the ordinary case of a bond for title, the rule as to which is well settled and simple. The facts in Skaggs v. Nelson are material. The complainant, claiming a vendor's lien, was the agent only of the vendor, probably acting as such for some per cent. or other compensation.

On the completion of the transaction, the conveyance of title and the execution of the notes for the purchase money, the agent advanced the money on the notes to the vendor, who was thus paid his purchase price in full, whereby he retained no lien, because there was thus nothing due to him. Or, as said by the court, "as the vendor received his whole purchase money when he made the conveyance, he never had any lien on the land which could be assigned."

The case at bar may here be restated : Thompson was indebted to Green ; to secure this debt, he gave Green the sale of a tract of land ; Green contracted the land to Gibson, who executed his note to Green for the purchase money ; at Green's request, Thompson conveyed the land to Gibson, and it was agreed that the vendor's lien should exist and continue.

The equities of the case under consideration are manifest ; and the inquiry, whether the distinct facts do not present a proposition for the favorable action of the courts—whether a case is not made, standing on its own facts, consistent with established principles, is certainly pertinent. It is the province of a court of equity to do equity. In this respect it is original, governed in each case by the light of the best reason which others have shed upon the subject.

The adjudications of our own courts, before quoted from and stated, clearly define the rules applicable to and governing the lien of the vendor under the circumstances severally detailed.

Those rules need not be repeated. They are clearly defined in Holloway *v.* Ellis; Russell *v.* Watt; Skaggs *v.* Nelson; Patterson *v.* Edwards; Davidson *v.* Allen; Pitts *v.* Parker; and Briggs *v.* Hill, *supra.* The other cases in our own courts therein cited and discussed need not be introduced into this discussion, as they are exceptional in some respects in their facts.

The court, in Moore & Call, Adm'rs, *v.* Anders, 14 Ark., 634, say: "The weight of authority no doubt is, that the equitable lien of the vendor is personal to him, and is not, unless under some peculiar equitable circumstances, assignable." Under what "circumstances" the lien would be assignable, the court declined to decide, as the question was not in the case.

Lord HARDWICKE is reported to have stated, in Pollexfen *v.* Moore, 3 Atk., 272, that the lien of the vendor does not prevail for the benefit of a third person; yet his decree was, that a legatee in that court was entitled to the benefit of the lien of the vendor. And the master of the rolls held, in Selby *v.* Selby, 4 Russell, 336, that when the purchaser died, and the vendor was paid the purchase money out of the personal assets of the deceased, the simple contract creditors of the purchaser stand in the place of the vendor with respect to his lien on the estate sold, against a devisee of the estate. This lien, then, does exist, under circumstances, in favor of third parties.

The supreme court of Tennessee, in Green *v.* Demoss, 10 Humph., 371, say: "The assignment of the vendee's note or obligation for the purchase money is not, however, *ipso facto*, an absolute discharge or extirguishment of the lien; it is only so conditionally. The lien is to secure the payment of the purchase money to the vendor. If, upon a transfer by the vendor of the vendee's note or obligation, the former be discharged from all ultimate liability upon his indorsement, or if the assignment were without responsibility on the part of the vendor for the payment by the vendee, in either case this would amount to absolute payment so far as the vendor is concerned, and the lien would be extinguished. But if the vendor be made liable upon his indorse-

ment, or voluntarily takes back the note, the lien will be regarded as merely suspended in the meantime, and he will be remitted to his equitable right, and may enforce the lien against his vendee as if no such assignment had been made."

In the light of the intimations in the foregoing quotation, What effect ought to be given to the fact, as is understood, that the debt of Thompson to Green is subsisting and undischarged; that the notes of Gibson to Green are collateral only to the liability of Thompson? "It is indispensably necessary," says Chancellor BLAND, "to the existence of such a lien, that the parties should stand in the relation towards each other of vendor and vendee of real estate, the purchase money of which has not been fully paid." 1 Bland's Ch., 523, 524.

The authorities unqualifiedly recognize the distinction between vendor and grantor. Kelly v. Mills, 41 Miss., 267; Russell v. Watt, id., 602. And see, also, Bouv. L. Dic.; Tom. L. Dic., and Bur. L. Dic. Do not Green and Gibson stand in the relation of vendor and vendee? Is Green in any sense an assignee of the note for the purchase money? Is not Thompson equally interested with Green in maintaining the lien?

In Wellborn & Duncan v. Williams, 9 Ga., 86, the court thus tersely and suggestively state the case: "There was no indorsement or undertaking to be liable, of any kind, on the part of the vendor, and no contract or agreement by which the lien was assigned. The question is, whether, upon a naked assignment of the notes of the vendee, the lien of the vendor attaches to the notes in the hands of the assignee. Upon principle and authority, our judgment is, that it does not." Are not these suggestions significant?

An early and leading case upon the subject under consideration is that of White v. Williams, 1 Paige, 502. Chancellor WAL-WORTH opens his opinion in this very significant language: "The claim of the complainant for a specific lien on the premises upon the ground that his judgment was obtained on a note given for a part of the purchase money cannot be sustained. At the time he

bought the note of Kingsbury, the latter unquestionably had such a lien ; but it was not pretended there was any agreement that such lien should be transferred to the complainant.   If Kingsbury could be considered as still retaining any such claim after the transfer of the note, it must be on account of his liability as indorser thereof.   But there is no evidence or even allegation that any steps were taken to charge him as indorser.   In a recent case where the vendor had negotiated the note, but was obliged to take it up himself when it fell due, Lord ELDON sustained the claim of the original vendor to a lien on the land (Ex parte Loaring, 2 Rose's Ca., 79).   But I am not aware of any case where the assignee of the note or other security has been permitted to sustain such a claim on an implied agreement to assign the lien. In the case of Macreath v. Simmons, 15 Ves., 329, cited by the complainant's counsel, there was an express agreement at the time of the sale, that the purchase money should be applied to the payment of the vendor's debt to the third person.   If Kingsbury holds such lien as trustee for the holder of the note, he should have been a party to this suit.   But I am satisfied that the sale and prosecution of the note to judgment in the name of the indorsee must be considered as a waiver of the original implied lien for the purchase money on the land."

These expressions of the learned chancellor, quoted, will give rise, in the mind, to a close and analytical observation of the facts in the case at bar.   Green contracted the land involved, to Gibson, out of the purchase money of which he was to secure the debt of Thompson, the grantor, to him.   It was agreed that the lien should exist, and both Green and Thompson are interested in maintaining it.   The notes of Gibson, the purchaser, it will be remembered, were given directly to Green, and Thompson, upon the contract of sale by Green, conveyed title direct to Gibson.

Chancellor WALWORTH, in the opinion quoted from, intimates that the lien might be transferred by special agreement, and that it might continue, if the vendor remained liable, on the notes.

In Schnebly v. Ragan, 7 Gill & John., 124, the court seems to

have inclined to the opinion that the assignee might get the benefit of the vendor's lien by express agreement; but held that when the vendor assigned the note for the purchase money, without recourse upon him, the lien was extinguished.

Judge STRONG, in Hallock v. Smith, 3 Barb., 267, says: "If the note or bond is assigned or transferred to a third person, for his benefit, the security is gone forever. The reason is, that there is no peculiar equity in favor of the third person. But that does not apply where, as in this case, the transfer is only for the purpose of paying the debt of the vendor, so far as it may be available, and is, therefore, for his benefit. Then the equity continues."

Shall v. Biscoe, 18 Ark., 142, presents these facts: Sale and conveyance of a tract of land; note for purchase money payable to the vendor; discount of the note, with an indorser as surety, by a bank; suit by the bank to enforce vendor's lien. In the opinion adverse to the bank, the court says: "The bank seems to have taken the note, upon the indorsement of Byrd, in the ordinary course of business. There is no allegation in the bill that she contracted for the lien of the vandor, or looked to it as a security when she discounted the note."

If understood, the lien in that case would have been declared, if the bank had contracted for it, and looked to it for security, or, as intimated by the court, the bank might, by proper action and agreement, have become subrogated to the right of the vendor to the lien.

Mackreth v. Symmons, 15 Ves., 329, is also believed to sustain the claim of the complainant in the case under consideration. The gist of this case is stated by Chancellor WALWORTH, supra, though the opinion is elaborate. As late as 1838, this very distinct language was uttered in Dryden v. Frost, 3 Mylne & Craig, 670: "It was contended on the part of the appellants that to give to the plaintiff the benefit of the vendor's lien for the purchase money unpaid, would be contrary to the statute of frauds, as he could only claim it by parol assignment from Atkinson, the vendor. It is to be observed, however, that the lien for the benefit

of the vendor himself, as well as the lien by the possession of title deeds, are not reconcilable with the principle of that statute, but that, nevertheless, equity gives effect to them, and that the plaintiff's title rests upon the latter as well as upon the former; for here we have the vendor and the purchaser, to one or other of whom the title deeds must, after satisfying the mortgages, belong, concurring in an arrangement for the payment to the plaintiff, being in possession of the title deeds, of what remained unpaid of the purchase money."

This lien was sustained in Pinchain v. Collard, 13 Texas, 333, in its primary facts, literally like the case at bar, but otherwise with this difference, that the presumptions indulged in by the court in that case are existing facts in this. Land was sold and title conveyed. A note for the purchase money was given by the purchaser direct to a third party. The court says: "It is not essential that we should express any definite opinion upon the question as to whether the assignment simply of a security taken for the purchase money carries with it the vendor's lien or not. The transaction we have to consider in this case is not a transfer merely, by the vendor, of a note taken by him for the purchase money. The note is not given to the vendor, but to the plaintiff, in the first instance. There is no evidence to show why this was done, but the presumption from the facts themselves is that the vendor agreed that the plaintiff should receive the money, and the defendant agreed that he would pay it to the plaintiff. The latter thus was substituted for the vendor. He had, perhaps, advanced the cash to the vendor, and thus enabled the vendee to obtain credit and perfect the purchase, when otherwise he might, perhaps, have failed, and to show that the benefit of the lien was claimed, it is expressly stated that the land was the consideration of the note. Under such circumstances, and when the assignee is substituted for the vendor, we are of opinion that the transfer of the debt passed the lien of the vendor to the plaintiff."

The following from the opinion of the court in Pinchain v. Collard is regarded as especially worthy of quotation: " Whether the

lien of the vendor passed by the mere transfer of the note or bond given for the purchase money is a point on which there is quite a diversity of opinion. Mr. Dart, in his Treatise on Vendors, says, that the lien is assignable by parol, and refers to Dryden v. Frost, 3 Myl. & Cr., 670, which fully sustains the conclusions drawn by the author. But in that case there were some peculiar circumstances. The vendor not only agreed that the plaintiff should receive the sum from the purchaser, but the purchaser also agreed to pay it to the plaintiff; that is, he gave him his promissory note for the amount."

The "peculiar circumstances" referred to as existing in Dryden v. Frost, not only exist in this case, but it was further agreed between all the parties that the vendor's lien should exist in favor of the complainant, and this agreement was repeatedly recognized.

Whether, under the "circumstances," the vendor's implied lien can be transferred to third parties, as well as whether the lien exists at all, is often, say many of the authorities, a question of "intention." If of intention, certainly, under the same circumstances, it ought to pass by express agreement. Under what state of facts this lien can be asserted by third parties, other than those stated in the adjudicated cases, has not been determined, yet numerous authorities point to its possible transfer in undefined circumstances not designated in the particular decisions. 13 S. & M., 59; 1 Story Eq. Jur., §§ 791, 793; 10 S. &. M., 173.

So, many of the cases recognize the theory that an assignment of the notes for the purchase money does not operate as a total extinguishment of the lien, but that if the vendor gets back the debt, or notes, the lien instantly springs up in his favor. And these cases intimate that if the vendor indorse the notes, and his liability remains, the lien continues. This is the deduction from the reasoning. 36 Miss., 419; 44 id., 247; 6 How., 364; 42 Miss., 401, etc., and, under circumstances, that the lien may be enforced by third parties.

Mr. STORY (Eq. Jur., vol. 2, § 1227) says: "The lien of the vendor is not confined to himself alone, but in case of his death t extends to his personal representatives (id., vol. 1 §§ 788–791;

vol. 2, §§ 1216, 1217).    It may also be enforced in favor of a third person, notwithstanding the doubts formerly expressed by Lord HARDWICKE."   Pollexfen *v.* Moore, 3 Atk., 273 ; Story's Eq. Jur., § 1220, note.    In the section last referred to, Mr. STORY says : "Where courts of equity established the lien as a matter of doctrine, it had the effect of a contract, and the lien was held to prevail, although, perhaps, no actual contract had taken place."    This quotation leads to the remark that, although the establishment of this lien was declared to have the effect of a contract, yet the courts have, in practice, denied that effect, and have hesitated in cases of a contract.    Although not precisely in point, Mr. STORY illustrates his text by numerous instances where this lien was enforced in behalf of third parties, mostly by substitution.

An inspection of Washburn on Real Estate has failed to discover any discussion of the point under consideration.    A single section only is devoted to the question of the transfer of the vendor's lien.    Referring to the case of Skaggs *v.* Nelson, *supra*, and two or three precisely similar cases in other states (13 Ohio, 148 ;  14 Ill., 468 ;  45 Penn. St., 361), this author says, vol. 2, p. 92 (17) :  "This lien does not arise in favor of a third party who pays the purchase money to the vendor for the purchaser, and takes his notes for the same."    And in the same connection he adds :   "Nor is the rule uniform how far the assignee of a vendor's claim for the purchase money may avail himself of his lien by way of security for the same."

Of the rule in Kentucky, Indiana and Alabama, Mr. WASHBURN says :   "It has been held in those states that the assignment of a vendor's claim for purchase money carries with it the vendor's lien, whether express or implied."    But that "the prevailing opinion in other states seems to be that such a lien (the implied lien, as is supposed) is a personal one, and does not pass by assignment of the claim."    This is so, he says, in Mississippi, "where the vendor sells his note, taken for the purchase money, unless a lien for the purchase money is expressly reserved in the vendor's deed of the estate."

These unsatisfactory and imperfect statements are followed by numerous references to adjudications on the subject in most of the states of the union.

Dart on Vendors and Purchasers is still more brief. This writer only says of the vendor's equitable or implied lien: "It would appear to be assignable by parol," citing Dryden v. Frost, 3 Myl. & Cr., 670.

The case of Briggs v. Hill, in our own courts, is familiar to the profession. Brooks sold and conveyed to Hill a tract of land, taking the purchaser's note for the purchase money. This note, by simple indorsement, passed through several hands, and in due course of trade became the property of the complainants, who, failing to collect the same by a suit at law, filed their bill in equity, asking to have the benefit of the vendor's lien. That case has been understood as laying down the rule, since firmly adhered to, that the vendor's lien for the purchase money of land sold and conveyed does not pass to his assignee of the notes given for the payment of such purchase money. The judgment of the court in that case is pronounced in this cautious language: "That an implied equity, even if the subject of transfer, of bargain and sale, cannot be assigned by implication." It will be observed that the court was careful not to declare this lien untransferable, or that it might not be transferred by express agreement.

If understood, two rules only are established as to the assignment of the vendor's lien in this state: 1. That the mere transfer of a note for the purchase money by the vendor does not transfer the lien where title is passed; or, in the language of the court just quoted, an implied equity cannot be assigned by "implication;" but, 2. When bond for title only is given, the transfer of a note for the purchase money carries with it the vendor's lien. And in this connection it may not be unimportant to record and concede the manifest difference between an implied lien or lien by implication, and an equitable mortgage. 2 Washb. on Real Prop., 87 (9). Although the former is treated in the light of the latter to some extent, yet one is "created," while the other is

"raised." Id., 83 (1); 6 How., 368. Willard on Real Estate, 114, says: "The lien of the vendor for the purchase money is analogous to an equitable mortgage," but makes no allusion to its transfer.

The origin of the vendor's lien by implication is the subject of speculation, and the courts differ in their account of it. And they are less agreed on the reasons opposed to its transfer. The study of the case at bar has induced, in the mind of the writer, these individual impressions for the expression of which he is alone responsible: 1. That the reasons assigned against the transfer or assignment, by contract, of the vendor's lien by implication, are wholly unsatisfactory to him, and he has met with no convincing argument why this lien should not be as available in the hands of assignees and third parties, as that subvendees, with notice, take the land subject thereto. The rule in Kentucky is sustained by the courts of a minority of the states, it is true, but the present impression of the writer is, that it is founded in the better reason and equity. 2. Although differing slightly in their facts, I now, after this investigation, see no substantial difference in principle between the case at bar and that of Russell *v.* Watt, *supra*. Both, after all, rest in parol, and Green in this is as much a seller and vendor as Russell in that. See Lindsey *v.* Bates, 42 Miss., 397; Fonda *v.* Jones, id., 792; Campbell *v.* Henry, 45 id., 326; Davis *v.* Pierce, MSS. Op., in all respects like that of Russell *v.* Watt, *supra;* Gillespie *v.* Smith, MSS. Op., Book K., p. 31; Stratton *v.* Gold, 40 Miss., 778; Eskridge *v.* M'Clure & Walker, 2 Yerg., 84, approved in 6 How., 362, and others. There are numerous adjudications by our own courts with reference to the vendor's lien; but as far as at present advised, only the above have any bearing upon the case at bar.

The court is understood to be agreed, following more particularly the case of Pinchain *v.* Collard, *supra*, that upon the bill as it now stands, the vendor's lien in this case should be upheld. It follows that the decree sustaining the demurrer must be reversed, which is accordingly ordered, with leave to respondent to answer in forty days from this date.