# Logwood *v.* Robertson, Adm'r.

### *Bill in Equity to enforce Vendor's Lien.*

1. *Vendor's lien; what will not defeat.*—The fact that the vendor had not obtained the legal title to the land, but held only a bond for title upon payment in full of the purchase money, will not deprive him of a vendor's lien on the land, to the extent of his interest therein, when he in turn sells to another on the same terms; but the sub-purchaser will take, subject to the lien (not merely equitable, but legal) of the first vendor, who had retained the legal title for his security.

2. *Same.*—In such a case, the sub-purchaser has a right to pay the amount his immediate vendor owed the original seller, as an incumbrance on the title, and to have a credit therefor on the amount due his own vendor; and where this is done and a credit allowed, the sub-purchaser has no cause of complaint that his vendor had not made full payment, and cannot set it up to defeat the lien of his immediate vendor.

3. *Same; what conveyance subject to.*—Where the legal title has not passed out of the original vendor, a sub-purchaser, who pays the amount due upon the original purchase—it being less than the amount he owes his immediate vendor, who gives due credit therefor—and receives a conveyance of the legal title direct from the original owner, will take it subject to a lien in favor of his own vendor; and where such payment was made with his own funds, the fact that the sub-purchaser procures title to be made to his wife cannot defeat the lien—the wife standing as a mere volunteer, in no better plight than her husband.

APPEAL from Limestone Chancery Court.

Heard before Hon. H. C. SPEAKE.

The bill in this case was filed by W. H. Robertson, against the appellants, Hettie B. Logwood and John E. Logwood, her husband, and seeks to subject certain lands in the possession of said Hettie B. to a vendor's lien for an unpaid balance of the purchase-money. Robertson having died pending the suit, his administrator was made party plaintiff in his stead. From the pleadings and proof it appears that on the 22d day of Sept. 1869, Robertson sold to John E. Logwood certain lands, for one-third cash and the balance in one and two years, taking his note for the deferred payments, and giving him his bond for title on the payment of the purchase-money. Robertson had purchased the lands from one Hine, and a part of the purchase-money was still unpaid. Robertson had no deed to the land, but held Hine's bond to make title. There is testimony tending to show that at the time the cash payment on said lands was offered to Robertson, he informed Logwood that there was a balance due the estate of Hine on the purchase of the land, and re-

quested him to pay such balance out of the cash payment, and at the same time delivered to him Hine's bond, endorsed by himself, for title, with instruction to have a deed made to him (Robertson.)    There is testimony, however, for Logwood, tending to show that when it was discovered that Robertson had only Hine's title bond he (Logwood) insisted on a rescision of the sale, and that to prevent this, Robertson and wife transferred Hine's title bond to Hettie B. Logwood, and authorized the conveyance of the land to be made to her, agreeing at the same time that it should go to her, discharged from any lien for the deferred payments of the purchase-money, for which John E. Logwood alone should be responsible.    This evidence is flatly contradicted by Robertson. Logwood paid to Hine's administrator the amount due from Robertson, and obtained credit for it as so much cash, and by his procurement an order of the Probate Court was obtained by the administrator to make title, and in pursuance of such order a deed was made to Hettie B. Logwood. It was shown that Logwood had no visible property at the time of his purchase of the lands, and soon after became insolvent and much in debt.    Mrs. Logwood, by her answer, which was made a cross-bill, alleged that the cash payment was made with moneys belonging to her statutory separate estate, and sought to have a trust declared in her favor on the lands.    Three of Mrs. Logwood's brothers testified that "she had a separate estate;" "that they had borrowed money from her and paid it back."    John E. Logwood testified that the money with which he paid the administrator of Hines, belonged to his wife, and that it was obtained by her as follows:    "A portion was given her by her father, a portion from the hire of negroes given her, and a portion from speculations made by him with her money."    The Chancellor decreed a lien on the lands for the unpaid purchase-money, and ordered a sale to pay the same.    From this decree Logwood and wife appeal to this court.

L. P. WALKER, and J. N. MALONE, for appellants.

ROBERT A. McCLELLAN, contra.

MANNING, J.—Upon an examination of this record we find that the decree appealed from must be affirmed.

Robertson, appellee's intestate, in the transaction between him and Logwood, gave to the latter a bond to convey when the purchase-money should be all paid.    The land was thus, by the express acts of the parties, charged with the payment of the price.    And the fact that the title was not then per-

fect in Robertson, the vendor, did not hinder the contract from so operating. The interest which a purchaser of land acquires, who has paid part of the purchase-money and taken a bond for title upon the payment of the residue, may be sold or mortgaged; but the sub-purchaser or mortgagee will take it subject to the lien, (not merely "equitable" but legal lien) of the first vendor, who, for his security, has retained the legal title in himself.—*Fenno v. Sayre & Converse,* 3 Ala. 458.

Whether it be true, as several witnesses testified, or not, that Robertson told Logwood at the time of their bargaining, that the last installment of the price the former owed to the estate of Hine was due and not yet paid, is a matter of no consequence. Any question that might have arisen out of that fact, was disposed of by what was done subsequently to Logwood's being informed of it. Logwood had the right to pay the residue of the purchase-money due from Robertson to Hine's estate, as an incumbrance on the land, out of the cash installment of the price Logwood was to pay Robertson, and to be credited thereon with the amount so paid— and Logwood did make that payment, and was credited with it by the extinguishment of so much of his debt to Robertson.

But here a contention arises. By the payment to Hine's administrator, which Robertson insists was made by his request and instruction, he, according to the terms of Hine's bond to him, became entitled to a conveyance of the land to himself; and the administrator, upon an order to that effect of the Probate Court, duly obtained, could have made such conveyance. An order was, in fact, obtained by the administrator, and a conveyance of the land made; but the order or decree was rendered in favor of—and the conveyance made to—the wife of Logwood, instead of Robertson. This was done by the procurement of Logwood, to whom Robertson gave Hine's title-bond with his, Robertson's name, indorsed on it, for the purpose, as he says, of handing it to the administrator, that he might take the steps proper for the purpose, and convey the land to him, Robertson. Logwood, on the contrary, says that on learning that Robertson had not a perfect title—he insisted that the contract between them should be rescinded, and that to prevent this, Robertson and wife transferred Hine's title-bond to Mrs. Logwood and authorized the conveyance of the land to be made to her—agreeing at the same time that it should go to her discharged from any lien or liability for the payment of the remaining two-thirds, or $6,000 of the price, and that he would rely for this upon Logwood alone and the notes he had given

therefor. This was denied by Robertson. Logwood had no visible property at the time, is not shown to have been then responsible, and was certainly insolvent and much in debt not long afterwards. We have attentively examined the numerous depositions on the subject and cannot perceive that the Chancellor erred in deciding the controversy in favor of appellee.

Moreover, appellants fail in their endeavor to show that the payment made by Logwood for the land, was made with moneys of the separate estate of his wife. The evidence of this is very unsatisfactory and weak, imputing to her moneys belonging to himself—and the profits made by his own exertions and skill, without any deduction for the support of the family. Indeed, we think it appears that whatever interest Mrs. Logwood acquired, was obtained by an instrument that must be regarded as merely voluntary on the part of her husband, that is, as having been procured by him from the administrator of Hine, without any consideration for it proceeding from Mrs. Logwood or her separate estate. The case is, therefore, almost exactly parallel with that of *Pylant v. Reeves*, (53 Ala. 131), in which we said: "As the land would have been indisputably bound for the purchase-money, if the conveyance had been made directly to the husband, and he, on a merely good consideration, had made the conveyance to a trustee for the use of his wife, it is equally bound under the conveyance the vendor made at the request of the husband." "The vendor's lien" (it was added) "prevails with as much force against a married woman purchasing land as against one fully *sui juris*. Her disabilities may protect her, but they can never authorize her to take and hold the lands of another without paying for them."—See *Perkins v. Gibson*, 51 Miss. 699.

Let the decree of the Chancellor be affirmed.