REBECCA J. MOORE *v.* WYATT C. LACKEY.

53    85
79    460

1. VENDOR'S LIEN. *Passes with note. When.*

If the vendor of land retains the legal title until payment is made, or if he creates an express lien in his deed to secure the purchase-money, an assignment of the notes given therefor carries with it the security to the same extent as it existed for the benefit of the vendor.

2. SAME. *How created.*

Whatever words distinctly convey the idea that the vendor retains or reserves a lien on the land create an express security. No formula of words is necessary to create such security. If the vendee accepts a deed, with the stipulation that the "land shall be bound for the notes," or "be security for them," or any other words expressing the intention that the land is pledged as a security, they are quite as effectual as the usual form reserving a lien as security for the notes.

3. SAME. *Imperfect or equitable mortgages.*

It is not necessary that a security on land for the purchase-money should be a technical mortgage or deed of trust. There are various sorts of securities, which, because they cannot be classified as mortgages or deeds of trust, are denominated "imperfect" or equitable mortgages.

4. SAME. *Express reservation. Runs with land. Passes to assignee.*

When the vendor expressly reserves a lien on the land for the purchase-money, it is a matter of bargain and contract, and runs with the land, and operates as an incumbrance upon it, not only for the vendor, but for his assignee of the purchase-money.

5. SAME. *Power of sale conferred. Title. Case in judgment.*

C. conveyed certain lands to M. In the deed the parties stipulated that, if M. failed to pay the notes for purchase-money when due, the sheriff of the county acting at the time of default in payment should sell the land, give title to the purchaser, and pay the money to C., or any assignee or holder of said notes. *Held*, that C.'s deed conferred a power on the sheriff, in a certain event, to sell the property and pay the notes; but that the title to the land was in M., and not in the sheriff.

APPEAL from the Chancery Court of Monroe County.

Hon. O. H. WHITFIELD, Chancellor.

Rebecca J. Moore, the appellant, filed her bill at the October Term, 1870, of the Chancery Court of Monroe County, against

the appellee, Wyatt C. Lackey. The allegations of the bill were, in substance : That, on the 10th of July, 1857, Stephen Cocke sold to L. B. Moore certain tracts of land, and Moore, for the purchase-money, executed his four promissory notes, two of which were unpaid at the time of the filing of the bill, — one due Jan. 1, 1861, for $3,452, and the other due Jan. 1, 1862, for $3,726 ; that, by the deed from Cocke to Moore, " a special lien is retained on the lands until the full payment of the notes," and that the deed was duly recorded ; that, on the 3d of January, 1859, Moore sold and conveyed to Lackey, the appellee, the forty acres in controversy in this suit; that Stephen Cocke transferred the notes before described to W. B. Taylor, who transferred the same to Rebecca J. Moore, the appellant ; that, in the year 1868, Moore went into bankruptcy, the notes were proved against his estate, and the special lien enforced by a sale of all the lands ; that the proceeds of such sale amounted to $3,603.30, which sum must be credited on the notes ; that Rebecca J. Moore became the purchaser at such sale ; that Lackey, the appellee, was no party to the proceedings in the bankrupt court, and that such proceedings as to him were void.

The prayer of the bill was for a decree for the sale of the land belonging to Lackey, to satisfy the balance found due upon said notes, after deducting proper credits ; and for general relief.

The deed from Stephen Cocke to L. B. Moore, which is made an exhibit to the bill, contains the following stipulation : —

" But it is the contract and agreement of the parties, that, should the said Lucien B. Moore, his heirs, executors, or administrators, fail or refuse to pay the said notes, as they severally become due and payable, at the time and place therein, it shall and may be lawful for the sheriff of the said county of Monroe, then in office, at any time after the expiration of six months from such failure or refusal, to sell so much and such parts of said land, for cash, as shall be sufficient to raise the amount then due, on advertising the same as in case of sale by execution at law, and convey the same to the purchaser or purchasers, and pay the proceeds to the said Stephen Cocke, or the assignee or holder of any such notes; and this in addition to the ordinary remedies otherwise provided for by law."

The defendant demurred to the bill, and assigned as cause of demurrer, —

1. That it appeared from the deed from Cocke to L. B. Moore that no equitable lien was reserved therein, but that such lien was affirmatively waived.

2. That it appeared from the bill that the questions therein raised have been finally adjudicated by the bankrupt court.

3. That it appeared by the bill that all the lands of L. B. Moore were sold, under a decree of the bankrupt court, to satisfy said lien ; and that, consequently, the fifty acres in controversy having been sold, under decree of court of competent jurisdiction, the lien as to that land was discharged.

4. That the purchaser of said fifty-five acre tract should have been made a party defendant to said bill.

5. That said bill is vague and uncertain, in not stating at whose instance proceedings in bankruptcy were instituted ; in not exhibiting as part of the bill a transcript of such proceedings ; in not stating who was the purchaser of said fifty-five acres of land at the bankrupt sale ; and because Stephen Cocke, the original payee and assignor of the notes, or his legal assigns, heirs, or representatives, is not joined as a co-complainant in the bill.

6. That Moore, the maker of the notes, or his representatives, was not made a party defendant to the bill.

7. That Moore's assignee in bankruptcy was not made a party defendant to the bill.

The demurrer was sustained by the court; and the complainant asked leave to amend her bill, by making the representatives of Stephen Cocke, deceased, the original vendor, and W. B. Taylor, the first assignee of the notes, co-complainants, and the personal representatives and assignee in bankruptcy of L. B. Moore, the original vendee, co-defendants.

But, as appears by the bill of exceptions, " the court, being of opinion that said demurrer was well taken as to all its grounds, including grounds other than those as to which complainant offers to amend her bill, refused to allow such amendments." The complainant excepted to the action of the court in refusing to allow such amendments, and brings the point to this court by bill of exceptions. A decree was

rendered, dismissing the bill; from which the complainant appealed, and assigns for error the action of the court below in sustaining the demurrer to the bill, and in refusing the complainant leave to amend her bill.

*Houston* and *Reynolds*, for the appellant.

1. It is manifest, by the stipulation in the deed from Cocke to L. B. Moore, that the parties thereto intended to create a special security for the payment of the purchase notes for the land. It is immaterial for our purpose whether this security is styled "a special lien," "an equitable mortgage," or "a *quasi* deed of trust." It is a security created by the deed, and which, by its terms, is extended not only in favor of the grantor, but to his assignee, or any holder of the notes. The purpose of the bill is to enforce this security, and in favor of the "holder of the notes." *Stratton* v. *Gold*, 40 Miss. 778; *Harvey* v. *Kelley*, 41 Miss. 490. There was an "equitable lien," a special security for the payment of the notes, created by the deed in favor of any holder of the notes; and this security, notwithstanding the special remedy prescribed, may be enforced by judicial proceedings. *Thompson* v. *Houze*, 48 Miss. 444, 449, and authorities there cited.

2. The bankrupt court had jurisdiction to enforce the lien against lands owned by Moore, at the time he was adjudicated a bankrupt. The land conveyed by Moore to Lackey was not subject to the jurisdiction of the bankrupt court. Bankrupt Law, §§ 1, 2. If the bankrupt court had attempted to enforce the lien on Lackey's land, it would not bar a subsequent suit in the proper forum; but it has not assumed jurisdiction over Lackey. But it is stated in the bill that Lackey was not a party to the proceedings in bankruptcy, and, of course, he is not concluded by them.

3. The sale under decree of the bankrupt court, embracing Lackey's land, was a nullity, for two reasons: 1st, The court had no jurisdiction over Lackey's land; 2d, Lackey was no party to the proceedings under which the land was sold, and, even if the court had jurisdiction, the proceedings were void as to Lackey and his lands, and, if void, the lien is not discharged or waived.

4. The bill states that the appellant became the purchaser of

the lands sold under the decree of the bankrupt court, and she is a party to this suit.

5. The proceedings in bankruptcy were set forth in the bill with sufficient certainty. If they were not, leave should have been given to amend.

The 6th and 7th grounds of demurrer are, doubtless, well taken. We asked leave of the court to amend; which was refused, and we excepted.

*Murphy*, *Sykes*, and *Bristow*, for the appellee.

1. In a bill by an assignee of the purchase notes, to enforce a lien expressly reserved, relief will only be granted according to the strict terms of the express reservation.

2. The doctrine is established by high authority, that " an express agreement that a lien is retained to a specific extent is a waiver of lien to any greater extent." *Brown* v. *Gilman*, 4 Wheat. 255. The court, in *Redford* v. *Gibson*, 12 Leigh, 332, says: "If the vendor chooses to rely upon his secret equitable lien, he should be cautious not to do any thing leading to the inference that such lien was not intended to be retained." There is neither legal title nor equitable lien reserved by Cocke. It can be neither a mortgage nor deed of trust; but, if either, the taking of a mortgage or trust deed is a waiver of all equitable lien. *Fish* v. *Howland*, 1 Paige, 20; *Little* v. *Brown*, 2 Leigh, 353; 2 Yerg. 84; *Mayham* v. *Coombs*, 14 Ohio, 428; 4 Kent, 153; 2 Sugden on Vendors, 60; Hilliard on Mortgages, 700; *French* v. *Jones*, 42 Miss. 792.

3. There is no legal title vested, or attempted to be vested, in the mortgagee or trustee. In the various definitions of a mortgage in Hilliard on Mortgages, 1–6, one ingredient stands out prominent and indispensable: There must be a conveyance of an estate to the mortgagee (or trustee in a deed of trust). " It is not a mere lien depending on possession, but a real interest, though conditional." *Barnard* v. *Eaton*, 2 Cush. 304. " It is a lien, and something more: it is a transfer of the property itself, as security for the debt. It is a trust estate." *Conard* v. *Atlantic Ins. Co.*, 1 Peters, 385.

4. The vendor's lien cannot be enforced against a subse-

quent purchaser for value, without notice of the lien. *Kilpatrick* v. *Kilpatrick,* 23 Miss. 124; *Dunlop* v. *Burnett,* 5 S. & M. 197; *Trotter* v. *Irwin,* 27 Miss. 772; *Clark* v. *Hunt,* 3 J. J. Marsh. 553; *Redford* v. *Gibson,* 12 Leigh, 343; *Fonda* v. *Jones,* 42 Miss. 794; *Stewart* v. *Ives,* 1 S. & M. 197.

5. It appears from the bill that the enforcement of this lien has been fully and finally adjudicated in a court of competent jurisdiction. "The judgment of a court of competent jurisdiction is conclusive on all parties and their privies." *Wyman* v. *Campbell,* 6 Porter, 239. "If any proper party be omitted, the decree will not bind that person, but will bind all those who were parties to the suit, and those claiming under them." Story Eq. Pl. § 75.

6. Not only was there a decree of a competent tribunal on the subject-matter of this suit, but the bill shows the lien therein decreed to be enforced has been discharged by a sale of the land under the decree.

*Sale* and *Dowd,* on the same side.

SIMRALL, C. J., delivered the opinion of the court.

The question between the parties, affecting their substantial rights, is, whether Cocke, in his deed of conveyance to Moore, reserved an express lien on the property, as security for the notes for the purchase-money.

Cocke transferred the notes to Taylor, who assigned them to the appellant, Mrs. Rebecca J. Moore. While the vendor's equity does not pass to the assignee of the debt for the purchase-money, it is well settled that, if the vendor retains the legal title until payment is made, or if he creates an express lien in his deed to secure the purchase-money, an assignment of the notes carries with it the security, to the same extent as it existed for the benefit of the vendor. If Cocke created an express lien, Mrs. Moore, assignee of the notes, would be the beneficiary of it.

There has been a manifest disposition in the courts to give a more liberal scope to the contracts of parties, intended to create securities for the fulfilment of their obligations. An agreement to make a mortgage on land to secure a debt, has in equity been construed to be a lien on the property, though the mort-

gage was never executed.  Literally, it was but the personal engagement of the party.

A security may be created on property, which is short of a grant, which does not convey, or profess to convey, the title, such as expressions in a conveyance that the vendor will look to the land as security for the money.  No formula of words is necessary to create that right.  Whatever words distinctly convey the idea that the vendor retains or reserves a lien on the land creates an express security.  Such language does not create a technical mortgage, nor does it prevent the legal title from fully vesting in the purchaser; but this security follows the land, and, being expressed in the deed, is notice, by reason of the registration, to creditors and purchasers.

"There is, generally, no difficulty in establishing a lien in equity, not only on real estate but on personal property," "wherever that is a matter of agreement, at least against the party himself, and third persons, who are volunteers, or have notice."  2 Story Eq. Jur. § 1231.  And courts of equity will regard the substance, and not the mere form, of agreements and other instruments, and will give the precise effect the parties intended, in furtherance of that agreement.  1 Story Eq. Jur. § 791; *Perkins* v. *Gilson*, 51 Miss. 699, 704, 705.

The stipulation in the deed is, in effect, that if Moore shall fail to pay the notes at maturity, the sheriff of Munroe County, then in office, may sell the property, on notice, for cash, and convey to the purchaser, and pay the proceeds to Cocke, or the assignee or holder of any of the notes.

The argument for the appellees is, that this attempted security is neither a mortgage nor a deed of trust; that there is inseparably connected with both these instruments a transfer of the title to the mortgagee or trustee, the trusts or the conditions being appendages of the title.

But, though not an ordinary, technical mortgage or deed of trust, it does not necessarily follow that it may not operate as security for the debt.  There are various sorts of securities, which, because they cannot be classified as mortgages or deeds of trust, are denominated "imperfect" or "equitable" mortgages.  Of these is the implied equity of the vendor, — "the vendor's lien;" the express reservation of a lien in the deed;

and the retention of the legal title, where the vendor has given a bond, or obligation to convey on payment of the money.

In the first two instances, the legal title completely passes to the grantee. The implied, or the express lien, are, in the estimation of a court of equity, where alone they would be recognized, impressed on the land, and follow it to the successive assignees who have notice; and though not of the dignity of title, legal or equitable, yet they are of virtue and value, as securities for the money, of equal strength and efficiency as a regular mortgage. Dealing with them in this light, a court of equity treats them as paramount to the legal title, and as efficient to transfer the property to a purchaser under its decree.

Where the lien is expressly reserved, it is a matter of bargain and contract; it runs with the land, and operates as an incumbrance upon it, not only for the vendor, but for his assignee of the purchase-money.

A court of equity, which looks through the form to the substance, does not exact any peculiar formula to create a security on lands. If the vendee accepts a deed, with the stipulation that the " land shall be bound for the notes," or " be a security for them," or any other words expressing the intention that the land is pledged as security, they would be quite as effectual as the usual form, " reserving a lien, as security for the notes."

The infirmity in the argument is the assumption that a security cannot be created, except in certain modes. In the several instances just mentioned, the purchaser takes the legal title, or the equitable title, incumbered for the protection of the vendor. He buys the property with that charge upon it by the very instrument that assures the title.

Cocke's deed confers a power on the sheriff, in a certain event, to sell the property and pay the notes. The title is not vested in him by the instrument, but in Moore; but at the same instant, and by the same assurance, that Moore takes the title, there is conferred on the sheriff a power over it. The question whether it shall be exerted or not depends on subsequent events and conditions. This power, as distinguished from an interest or title, is imparted to make the land, by a sale,

produce the money. The purchaser accepted the title, with this condition annexed to it. The fundamental idea is, that the land is pledged for the money. The vendee accepted the title with that incumbrance, in the form, perhaps, of a condition subsequent. Moore agreed that, if the purchase-money was not paid, then the contingency had arisen, when the power might be exerted.

There is nothing immoral or illegal in such a contract. The end sought was laudable; and we are well satisfied that a security was thereby created, which ought to be enforced, at the suit of a holder of the notes.

It appears from the allegations of the bill, that, in a suit in the bankrupt court, to which Lackey, the appellee, was not a party, all the lands embraced in the deed from Cocke to Moore were sold.

Lackey had purchased from Moore fifty-five acres, a small fraction of them. Lackey had notice of the stipulation we have been considering, in the deed to his vendor, and he acquired title, subject to the incumbrance. The decree in the bankrupt court could not affect his title, because, not being a party, he was not concluded by it.

But the bill is not as full and certain, in disclosing these proceedings in the bankrupt court, as is desirable.

It is conceded by the counsel for the appellant that the demurrer was well taken, on the grounds which were attempted to be cured by the amendments to the bill, which were offered after the demurrer was overruled.

The Chancellor declined to permit the amendments, being of opinion that there were no merits in the bill on the main question. We think the amendments ought to have been allowed. We reverse so much of the decree as dismissed the bill, and remand the case, with permission to amend. Each party to pay his costs in this court.

*Decree accordingly.*