## MARGARET ERSKINE v. F. A. FORBES et al.

*Mortgages — Purchase Money Notes — Vendor's Lien — Subrogation.*

Appellee filed both an original and a supplemental cross-bill. In
In the first he claimed that his mortgage, though executed by E.
alone, was valid because mortgagor was owner of the land. By the second
he insisted that Mrs. E. could not enforce the payment of purchase-
money notes given by E. for the land, and which were valid in the hands
of A. & Co. by transfer from E., on the ground that Mrs. E. was the real
purchaser of the land in controversy, and for this reason the purchase
of said notes by her from A. & Co. operated as a payment thereof against
her intention. *Held,* that if, as between Mrs. E. and appellee, she was
the real owner of the land, then appellee acquired no right by mortgage
executed by E. alone, and appellee is entitled to no relief under his cross-
bill.

*Same.*

If, on the other hand, Mrs. E. was not the owner of the land, but had
only an equitable right as against her husband, E., and was not bound for
the payment of the notes given for it, she had the right to enforce
vendor's lien, and such right was superior to appellee's mortgage. *Held,*
that appellee could not say Mrs. E. was not the owner and thus make
his mortgage good, and, having sustained this position, then say that
she was not always owner, and thus convert her intention to purchase
the notes secured by vendor's lien into a payment for appellee.

---

**1**

A lien for the purchase money expressly reserved in a conveyance of land
is in effect an equitable mortgage, and an assignment of the debt carries with
it the lien. Kausler v. Ford, 47 Miss. 289; Moore v. Lackey, 53 Miss. 85.

Where an express lien on land is reserved in a note for the purchase money,
though the deed recites payment thereof, the lien will pass by assignment of
the note. Hobson v. Edwards, 57 Miss. 128.

Where the vendor of land, by title bond, assigns the debt the lien passes to
the assignee, and the vendor cannot afterward do any act which will affect
it. Mhoon v. Wilkerson, 47 Miss. 633; Moore v. Lackey, 53 Miss. 85.

Under section 1124, Code 1880, providing that the assignee of a claim for
the purchase money of land may enforce the vendor's lien as the vendor could,
where by the contract it is agreed that payment of the purchase price shall
be made to another than the vendor, such other becomes the payee of the
purchase price, and may enforce the lien. Bank v. Knapp, 61 Miss. 485.

A cross-bill may be predicated upon separate and independent matter if it
grow out of the same subject-matter involved in the original bill. Dewees v.
Dewees, 55 Miss. 315.

For other annotations in this case, see brief for appellant.

The record in this case begins with cross-bill of John Erskine, which stated substantially as follows:

That on November 21, 1876, T. H. and J. M. Allen & Co. and Geo. W. Arnold, executor of Julia F. Perry (lately Julia F. Locke), executrix of A. J. Locke, deceased, and Wm. D. Perry, her husband, and A. G. Smith filed their original bill against Forbes, Fitzpatrick, and Pittman and alleged that said executor and executrix and Smith sold certain lands to one Erskine, giving him a bond for title conditioned to convey the land on payment of two notes for $2,265.75 each, dated May 22, 1872, and due January 1, 1873, and January 1, 1874, respectively. That complainant took possession of the land and was in possession when cross-bill filed.

That there was due January 1, 1873, on the first note $294.72, the second note being unpaid. These two notes were transferred to T. H. and J. M. Allen & Company. That a deed was afterward made to Erskine by said Arnold et al., and that Erskine failed to pay the notes. That on May 16, 1876, Erskine conveyed to one Pittman said land to secure the payment of a debt due Forbes and Fitzpatrick, and that they took with notice of the prior lien. That on December 2, 1876, Erskine filed his answer to said original bill, admitting the debt to Forbes and Fitzpatrick, and the conveyance, but denied that a good title passed. That no effort was made by said Arnold, Smith, and Locke to make a good title; and that his improvements amounted to $3,000, and that he had paid taxes amounting to $2,500 and that about $7,500 had been paid on the purchase money, the latter being paid with the separate means of Mrs. Margaret Erskine with the distinct agreement with vendors that the title was to be made to her; that she was a necessary party to the suit, and that an action of ejectment was about to be brought for part of the land by the heirs of one Wiley Davis; that the deed tendered by the bill did not convey a good title and was not a warranty deed; that part of the land was entered by one Wiley Davis and sold by his administrator to Greenwood LeFlore and Nathan Hooker, and that said LeFlore conveyed his one-half interest to the heirs of Allen Sharkey, and that Greenwood Sharkey, the sole heir of Allen Sharkey, conveyed his interest in said land to complainant, Erskine, and that $12,000 of the purchase money remained unpaid; that a bill was filed to subject the land to the payment of the unpaid purchase money, and that said land was sold under a decree of court to satisfy such

claim, and that the said Smith and Locke purchased at this sale, and afterward conveyed to cross-complainant as stated; that Hooker's one-half interest did not appear to have been conveyed and still remained the property of the heirs of Hooker; that the said Smith and Locke covenanted to give a warranty deed to cross-complainant, and that no such deed had yet been tendered, and that unless a valid conveyance be made, then the trade should be rescinded and cross-complainant's purchase money, taxes, and improvements be refunded to him; that Forbes and Fitzpatrick had, besides the lien on the land, a lien on certain mules and horses which latter security ought first to be exhausted, and that if this could not be done cross-complainant was willing that they be paid out of the money refunded to him by vendors.

That Smith and Locke were insolvent, and that if the bond for title could be found (it not being produced and could not be found) it would be worthless. There was prayer for account and rescission, and that the sum found to be due be enforced by vendor's lien, and a conclusion for general relief.

Smith, Arnold et al. filed answer to the cross-bill and averred that the deed tendered conveyed good title; that no ejectment had been brought; denied that Wiley Davis never parted with title; denied improvements; alleged that the whole title to the land was in Greenwood LeFlore since 1848, and that by adverse possession the title was good. Denied that LeFlore filed a bill against the land, but said that a decree of sale was rendered by the United States Court in Bankruptcy against Erskine and his assignee, conveying all the interests of Sharkey and Erskine, and that at the sale Smith and Locke purchased for $10,000, and that Smith and Locke afterward sold to Erskine, and that the deed tendered to him conveyed a good title. Denied that the heirs of Nathan Hooker had any interest in the land, but that Hooker conveyed the land to LeFlore; that the heirs of Wiley Davis had no title to the land. Alleged that in 1866 part of the land was sold to the State of Mississippi for taxes; that in 1871 Locke and Smith bought from the State, and again did so in 1872. Answer denied that the purchase money was paid by Mrs. Erskine with the understanding that the title was to be made to her. Alleged that in June, 1877, Lambkin and Eggleston recovered a judgment against Erskine for $3,220.33, and that at the same time there was suit pending against him for some $2,000 by the Metropolitan Bank, as well as other suits against cross-complainant; that the Lambkin

and Eggleston judgment was set aside and cause continued, but that at the December term, 1878, another judgment was rendered against Erskine for $1,909, and that other judgments for $2,000, $399.25, $356.30, and $379.35 were rendered against him.

Averred that Arnold and Julia F. Perry were fully authorized by the will of A. J. Locke to convey title to Erskine, but that since the removal of the said Julia F. Perry, the remaining executor did not have the power to make a new deed. Denied that Erskine was entitled to a rescission of his contract. Averred that they knew nothing of the amount due Forbes and Fitzpatrick. Concluded by asking dismissal of the cross-bill.

Eugene A. Forbes, sole owner of the securities described, answered and said:

He admitted all the allegations of the original bill; that on May 16, 1876, Erskine owed respondent and Fitzpatrick $1,989.59 and gave his note for same, payable March 1, 1877; that at the same time Erskine owed a mortgage debt to Lehman, Abraham & Company, secured by said land; that Forbes and Fitzpatrick agreed to take up this mortgage to the amount of $2,000 and advance supplies, which, with the debt due them made the total sum due $4,500; that to secure this sum Erskine gave a mortgage on the land in controversy to S. B. Pittman, as trustee, under date of May 16, 1876; that on November 24, 1876, Erskine made another mortgage on his crops to secure $1,000. There were certain credits, leaving balance due Forbes of $2,389.91. Respondent prayed that his answer be made a cross-bill for the purpose of enforcing his mortgage and making all parties defendants.

Erskine filed an answer to Forbes' cross-bill and set up a long and detailed statement of the accounts between himself and Forbes and Fitzpatrick, in which statement much of the debt was disputed.

The mortgage to Forbes and Fitzpatrick embraced the homestead, the conveyance of which was not joined in by Mrs. Erskine. Answer prayed that the homestead be exempted.

After all these proceedings there was an amended and supplemental answer and cross-bill of Forbes, reciting (after setting out the previous proceedings) that since the filing of the original cross-bill John Erskine had died; that when Erskine took the title bond on contract of sale from Locke and Smith, it was understood that the purchase was made for the use of Mrs. Erskine; that the purchase money then paid was the money of Mrs. Erskine; that it was understood (but outside of the written con-

tract) between John Erskine and Locke and Smith that when paid for the land was to be conveyed to Mrs. Erskine.

That all the improvements were paid for with Mrs. Erskine's money, and that these statements were made in the answer of John Erskine.

That on June 27, 1877, John Erskine conveyed this land to A. McK. Kimbrough, as trustee for his wife, and made subject to the unpaid purchase money; that this deed was recorded; that since the filing of the original cross-bill Mrs. Erskine has paid the amount of purchase money due to Locke and Smith, who have no longer any claim, and that the original bill was not prosecuted for their benefit but for Mrs. Erskine's benefit; that Mrs. Erskine claimed that, by virtue of her payment to the complainants, she became entitled to their lien and became entitled to the notes of Erskine, and to have a decree rendered in her favor and stand in the place of Locke and Smith, the complainants. Respondent and cross-complainant claimed that Mrs. Erskine was the real owner of the land, as before stated, at the time the money was paid to complainants, and that her payment operated as a satisfaction and extinguishment of the debt, and that Mrs. Erskine could not assert any claim against the land in conflict with Forbes' mortgage, nor superior thereto. All the original parties, as well as Mrs. Erskine, were made parties defendant. There was prayer that the lien for the purchase money be canceled and that Forbes' mortgage be declared a first lien on the land.

Mrs. Erskine demurred to this amended cross-bill; which presented the question as to whether she, by operation of law, lost her money by paying the amount of the lien due to the complainant, or was entitled, as she claimed, to subrogation to the rights and lien of Locke and Smith.

This demurrer was overruled, whereupon there was appeal to the Supreme Court.

APPEALED from Chancery Court, LeFlore county, R. W. WILLIAMSON, Chancellor.

Reversed, demurrer sustained, and bill dismissed.

*Attorney for appellant, Frank Johnston.*

*Attorney for appellee, J. L. Harris.*

Brief of Frank Johnston:

Mrs. Erskine's equity to be substituted to the incumbrance she has bought in, I submit, is very clear. She did not owe the debt to Locke and Smith, or to T. H. and L. M. Allen. And, morever, she is under no sort of personal liability, express or implied, for its payment. The statement in the deed to her trustee that the conveyance was subject to the vendor's lien imposed no kind of personal liability on her, though it bound the land. But the land was already charged with this lien, and if the conveyance had been silent on this subject, still the land would have gone to Mrs. Erskine under her deed still charged with the lien. So that the recital or statement in the deed did not change the status of the property or the lien from that which would have been given it by the law in the absence of all stipulation. In a word, Mrs. Erskine took the land under her deed charged with the lien for the purchase money. And, therefore, between her and Allen & Co. the land was bound to the latter under their vendor's lien.

But Forbes had a *second* mortgage. He voluntarily accepted it, with full knowledge of the first lien. He, therefore, could never reach the land until the first incumbrance was paid off, and moreover this was his attitude and this the extent of his equities and rights when the bill was filed, and when he answered. He had a perfect right to redeem the first incumbrance, or to take the surplus of the proceeds of a sale after payment of Allen's claim, and he has precisely both these rights at this moment.

There is no pretense that Mrs. Erskine's own money was not paid to Allen & Co., and the position of Forbes is that this use of Mrs. Erskine's money, when she did not owe him a cent, and when she is under no obligation to Allen & Co., or liable in any way for that debt, and under *no obligation to Forbes* to pay off and *discharge* the first incumbrance, has actually canceled the first incumbrance and gives him a first mortgage.

In Ross *v.* Wilson, 7 S. & M. 766, the principle I contend is one applicable to the case at bar was decided. There, Brown, Wood & Co. owed W. B. Ross $6,000, and Andrew Wood, one of the firm, gave his note for the debt with Gary & Doyle as sureties. Wood then conveyed certain property by way of mortgage indemnity to Gary & Doyle in respect to the Ross debt, as well as to secure to Doyle a debt of $2,000 due to him. Woods then sold the property to Wilson, who paid the debt to Doyle, taking his interest in the mortgage. It was decided that Wilson was to be

substituted to the rights of Doyle and should share *pro rata* in the mortgage security. It will appear, of course, that Wilson bought the property charged with the mortgage.

The court said in Staples *v.* Fox, 45 Miss. 667, that whenever a party has such an interest in property as makes it incumbent on him to get in an outstanding claim or equity for its protection, good conscience dictates that he shall have all the rights which the holder of the equity had. 45 Miss. 667.

And it was held that a vendor's lien may be the subject of equitable substitution. 45 Miss. 667; Kleson *v.* Scott, 6 Dana, 137; Bank *v.* Chrisman, 3 B. Mon. 50.

It is true that one party cannot make another involuntarily his debtor. It is said as to one party volunteering to pay the debts of another. But another class of persons who buy in incumbrances are entitled fully to subrogation, viz.: those who buy in an outstanding claim or equity for the protection of their rights in the property. In such cases the party advancing the money may be placed in the shoes of him whose claim or equity has been paid off. Staton *v.* Alcorn, 51 Miss. 72; Story on Equity Jurisprudence, §-1227.

So a purchaser at a void foreclosure sale whose money has been applied to the mortgage becomes the equitable assignee of the mortgage. Clark *v.* Wilson, 56 Miss. 753.

The very case is put in Staples *v.* Fox, of a purchaser on a subsequent incumbrance from the vendee discharging a vendor's lien. 45 Miss. 681.

If Mrs. Erskine owed Forbes the debt he claims, it would be different. Nor is she under any duty to him to pay off the Allen incumbrance, nor was she under any personal liability to pay the notes given to Locke and Smith. But because she has invested her own means, in this vendor's lien debt, Forbes asks that her money be confiscated or applied to his use. Forbes' rights have not been interfered with, and his equity remains unaffected. He has precisely the same rights and the same security now that he had before the property was conveyed to Mrs. Erskine. He stands just where he placed himself when he voluntarily took a second mortgage for $4,500, except that one of the vendor's lien notes was paid down to about $300, and about half of his own debt has been paid by Erskine.

There is no privity between Mrs. Erskine and Forbes, and there is no theory on which he can appropriate her money.

Erskine bought in his own name, and the contract of sale was *that title was to be made to him.* He gave his own two notes for the purchase money. The deed that was made by his vendors was to him.

The deed from Erskine to Mrs. Erskine's trustee recites that it was understood between Locke and Smith and John Erskine that the title would be made to Mrs. Erskine, and that John Erskine used Mrs. Erskine's money in making payments on the first note.

But Mrs. Erskine never had a contract of any kind with Locke and Smith, and there is nothing to show that she authorized this use of her money. The extent of her participation was to take a conveyance of this land, incumbered by the vendor's lien, and also by this large mortgage to Forbes and Fitzpatrick. There is nothing in this to impose a personal liability upon her in respect to either debt, and absolutely nothing to impress upon her the obligation of paying off Allen & Co. for Forbes' benefit. There was nothing to prevent her from buying in this first incumbrance. It would be absurd to say that it has injured Forbes.

The cross-bill set up the new and distinct matter of having the first incumbrance canceled, and it also made a new party to the cause, Mrs. Erskine. In both respects it offended the rules of pleading.

In Clark *v.* Wilson, 56 Miss. 753–756, it was said that a new and distinct matter could not be introduced into a cause by cross-bill. That was where a party bought at a void mortgage sale and filed an original bill.

New and distinct matter not embraced in the original suit cannot be introduced by a cross-bill or made ground for relief. Gilmer *v.* Felhour, 45 Miss. 627; Thomasson *v.* Neely, 50 Miss. 310.

A cross-bill is really a defense to the original suit. Story on Equity Pleading, § 399.

And cannot introduce new and distinct matters. Story on Equity Pleading, § 401; Daniel on Chancery Practice & Pleading, page 1548, and note 2 on page 1549.

On both these propositions I respectfully submit that the decree of the chancellor should be reversed and the amended cross-bill of Forbes dismissed.

Brief of J. L. Harris:

The only question for the consideration of the court is whether the purchase was a *payment* or otherwise. The general rule is

that where the owner of the equity of redemption buys in a mortgage it will be regarded as a payment where he was under obligations to pay the mortgage debt, but otherwise it will not be a payment and the mortgage can be kept alive.

If a man buys mortgaged property and agrees, as part of the consideration, to pay the mortgage debt, payment by him operates as a discharge of the mortgage, whether he takes an assignment of the mortgage, an acknowledgment of payment, or a release. Or, if he owes the mortgage debt, the rule is, of course, the same.

A difficulty arises frequently in determining what words will create a personal liability to discharge the mortgage debt. It seems that where the purchaser buys " subject " to the mortgage, without other words, that does not obligate him to pay it, and in such case he can take a transfer. The courts say that the use of this word alone may have had no other purpose than to protect the grantor from the penalties imposed by statute in case of failure to apprise the grantee of the existence of an incumbrance, or to prevent the grantee from impeaching the validity of the mortgage upon the property, or it may have had a purpose other than fixing upon the grantee a personal liability to pay the debt.

In Libbins v. Hall, 29 Barb. (N. Y.) 529, the court say that to create such liability either the language of the deed should be " subject to the payment " of the outstanding mortgage, or that " it forms a part of the purchase money which the grantee in the deed assumes to pay," or some equivalent expression which clearly imports that an obligation is intended to be created by one party and is knowingly assumed by the other. But the court also holds that the parties may speak not only by the terms of the deed, but by circumstances of the transaction and the language of their acts.

The language of the deed here is as follows: " This conveyance to be subject to the unpaid purchase money for said land under the contract originally made by me," etc. When this language is considered in connection with the circumstances of this transaction, which we will note more fully hereafter, and the relations of the parties and the interest of the grantor, it would seem to warrant the construction for which we contend. 1 Jones on Mortgages, § 856.

But however this may be, this case should be affirmed upon the familiar rule that a mortgage will not be kept alive in aid of a fraud or wrong. Although in equity a mortgage may be kept alive when this is requisite to the advancement of justice, this is never allowed when the result will be, through the forms of law,

to aid in perpetrating a fraud or an injury. 1 Jones on Mortgages, § 863; McGiven *v.* Wheelock, 7 Barb. (N. Y.) 22; Worthington *v.* Morgan, 16 Sim. 547.

The court will bear in mind that the appellant received all the benefit of the debt contracted by her husband with appellee, and *in equity* is as much bound to discharge the mortgage as he himself would have been. The fact is admitted by the demurrer and by acceptance of the deed from John Erskine that Margaret Erskine was the real purchaser, and her husband's name was a mere blind, and in such case she was always personally bound to pay the Allen & Co. note, and, if so, she could not keep a transfer and keep them alive, but her purchase was in law a payment.

If she had been *sui juris* under no disability, this would undoubtedly be so, but being a married woman, she could not buy real estate on credit and make herself liable personally, and, therefore, was never personally liable for the purchase money represented by the Allen notes.

But the answer to this is that a purchase by a married woman is only voidable not void. She may make the payments and complete the bargain. The contract is binding on her vendor. She cannot keep the land and not pay for it.

If she does pay and complete the bargain, she pays in pursuance of her bargain when she bought, which was not void, and constituted an equitable obligation that she comes fairly within the rule *in equity* that one under contract to pay a mortgage debt cannot take a transfer and keep it alive against subsequent incumbrances. See Nicholson *v.* Neiderhoff, 50 Miss. 56, as to the nature of a purchase by a married woman on credit.

OPINION.— COOPER, J., delivered the opinion of the court:

By his original and supplemental cross-bills the appellee, Forbes, attempted to deal with the land in two antagonistic characters. By the first he claims that his mortgage, though executed by Mr. Erskine alone, is valid because Mr. Erskine was the owner of the land mortgaged. By his supplemental cross-bill, he insists that Mrs. Erskine cannot enforce the payment of the notes given in purchase of the land by Mr. Erskine, and which were confessedly valid in the hands of Allen & Co., on the ground that she was the real purchaser of the land, and for this reason the purchase of the notes by her from Allen & Co. operated as a payment thereof against her intention. The answer to these propositions is that

if, as between herself and Forbes and Fitzgerald, Mrs. Erskine was the real owner of the land, then they acquired no right by the mortgage executed by Mr. Erskine, and Forbes is entitled to no relief under his cross-bill; if, on the other hand, Mrs. Erskine was not the owner of the land but only had an equitable right as against her husband, and was not bound for the payment of the notes given for it, she has the right to enforce the vendor's lien and it is superior to the mortgage of Forbes. In other words, Forbes cannot say that she is not the owner and, therefore, his mortgage is good, and having sustained this position, say that she was not always owner and thus convert what was intended by her as a purchase of the notes secured by the vendor's lien into a payment for them. The demurrer should, therefore, have been sustained and the supplemental cross-bill dismissed.

The decree is reversed, demurrer sustained, and supplemental cross-bill dismissed.

